**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RONALD HUNTLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-017-JHP |
| | ) | |
| **CITY OF OWASSO, a Municipal** | ) | |
| **Corporation of the State of Oklahoma,** | ) | |
| **JAROD MITCHELL, an individual,** | ) | |
| **TIM HUTTON, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER and OPINION**

Before the Court are Defendants' Motions for Summary Judgment [Dkt.#s 37 and 38], Plaintiff's Responses in Opposition, and Defendants' Replies. For the reasons set forth below Defendants' Motions for Summary Judgment are granted..

**I.  Motions for Summary Judgment**

**A. Facts**

On the evening of March 31, 2009, at approximately 9:30 p.m., officers of the Owasso Police Department were radio assigned to 9616 N. 110th East Avenue, in Owasso, in reference to a physical domestic incident that was in progress. The Plaintiff's wife, Susan Huntley, made the 911 call to the police department. Mrs. Huntley told the dispatcher that her husband was very angry and had knocked her to the floor. Mrs. Huntley also stated there were many weapons in the house.

Numerous officers responded to the call, but Officer Tim Hutton and Officer Jarod

Mitchell were first to arrive. As the two officers approached the front door Officer Hutton heard Plaintiff say to his wife, "I don't ever want you talking to them again." The Plaintiff then started to close the door but Officer Hutton prevented him from doing so by blocking the door with his foot. Officer Mitchell responded by commanding Plaintiff "don't do that!" several times. Officer Hutton ordered the Plaintiff "outside, right now!" The Plaintiff yelled "No! I didn't do anything!" Officer Mitchell then stepped across the threshold of the front door into the entryway and grabbed Plaintiff's left arm, pulling him toward the front door, where Officer Hutton was then able to grab him by his right arm.

Plaintiff resisted the Defendants' efforts by pulling against them, but Defendants proceeded to escort Plaintiff across the porch and out onto the front lawn. Officer Mitchell took Plaintiff to the ground by stepping in front of Plaintiff's left leg, blocking it, causing Plaintiff to fall to the ground while Defendants continued to hold onto him. Once on the ground, Plaintiff offered some resistance to being handcuffed, but Officer Mitchell was able to secure him without using anything other than a firm grip.

In the meantime, Officers Bell and Officer Mutii arrived and made contact with Mrs. Huntley inside the residence. Mrs. Huntley was visually shaking and crying. Officer Bell, who is a Certified Domestic Abuse Investigator, noted that Mrs. Huntley had large red marks around her neck, consistent with being strangled. Mrs. Huntley also complained she was having trouble breathing and felt like her blood pressure was elevated. Officer Bell noted her voice was raspy and she was unable to speak loudly. Paramedics from the Owasso Fire Department were then asked to respond to check on her condition.

During her subsequent interview with Officer Bell, Mrs. Huntley stated she had arrived

home from work after meeting with a mutual friend of her and the Plaintiff.  Mrs. Huntley told Officer Bell that Mr. Huntley had been going to their mutual friend for massage therapy.  The friend met Mrs. Huntley to tell her she would not be giving Mr. Huntley any more massages because he had been talking to her about sex and asking her to massage him in inappropriate places.  Mrs. Huntley stated that when Mr. Huntley learned that she would no longer give him massages, he became enraged.  Plaintiff became furious with his wife and became verbally abusive to her trying to start a fight.

Mrs. Huntley retreated to her bedroom at which time Plaintiff followed her, grabbed her by the neck and threw her on the floor.  Mrs. Huntley was able to get to the telephone and call 911.  Mrs. Huntley told Officer Bell that while she was calling 911 Mr. Huntley stated "Oh, good, go ahead and call the police!  You will be sorry."

After Mr. Huntley was handcuffed in the front yard by Officer Mitchell, Officer Jonathan Foyil arrived.  Officer Foyil was requested to transport Mr. Huntley to the Owasso Police Department.  Officer Foyil did so and Mr. Huntley was subsequently booked at the Owasso Police Station, and later transported to the Tulsa County Jail.

While Plaintiff was at the Owasso jail, he made a complaint of pain but refused to be transported to a hospital for examination.  Plaintiff was then booked into the Tulsa County Jail. When undergoing the medical screening prior to being booked into jail, Plaintiff stated he had no injuries.

Mr. Huntley was charged with Domestic Abuse by Strangulation, Resisting Arrest and Obstruction of an Officer.  The charges were later modified by the Tulsa County District Attorney to simple Domestic Assault and Battery and Obstructing an Officer.  The charges were

later dropped by the Tulsa County District Attorney's office when Mrs. Huntley informed them that she would not be a cooperative witness.

On January 8, 2010, Plaintiff filed a Complaint alleging the Defendants used excessive force in restraining him in violation of the Fourth, Eighth and Fourteenth Amendments. Plaintiff also claims the City of Owasso has been deliberately indifferent to the need for better training, supervision, and discipline of its employees regarding the use of excessive force. Plaintiff has also asserted negligence claims against the City, including state based claims for failing to train and supervise its officers.

Defendants filed Answers and denied Plaintiff' allegations. Defendants filed a Motion to Dismiss on February 11, 2010. On March 4, 2010, the parties entered into a stipulation dismissing the Plaintiff's negligence claims against the officers, dismissing the Owasso Police Department as a party, and dismissing Plaintiff's Eight Amendment claims. On March 7, 2011, Plaintiff dismissed Officer Lem Mutti, Officer Nancy Bell, Officer Lloyd Hutton, and Officer Jonathan Foyil from the instant case without prejudice.

**B. Discussion**

**1. Qualified Immunity**

When confronted with a claim of qualified immunity, a court must go through the two-step process set out in *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court must ask the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 at 201. If this question is answered in the affirmative, the next step "is to ask whether the right was clearly established." *Id*. If there was no constitutional violation, or if there was a violation but the right

was not clearly established, the officer is entitled to qualified immunity. In *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009), the Supreme Court held that lower courts are allowed, but not required, to decide the "clearly established" prong without consideration of the first prong.

Plaintiff contends Defendant Officers unlawfully arrested him in violation of the Fourth Amendment. The exigent-circumstances doctrine creates an exception to the general prohibition of warrantless entries when: (1) the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others: (2) the conduct of the entry was reasonable. *See United States v. Najar*, 451 F.3d 710 (10th Cir. 2006). Further, in evaluating whether exigent circumstances exist, the Court must examine the circumstances "as they would have appeared to prudent, cautious, and trained officers." *Roska v. Peterson*, 304 F.3d 982, 990 (10th Cir. 2002).

The Supreme Court has recognized several types of exigent circumstances that may justify warrantless entry into a residence, including "the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the need to assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006).

In this case, the Court finds the entry into Plaintiff's residence was justified due to the risk of danger to Plaintiff's wife, as well as the unknown danger presented by the Plaintiff to himself, or others. Defendant Officers responded to a domestic assault and battery in progress to restore peace and conduct an investigation. During the course of their investigation, circumstances arose which gave them authority to enter the residence. Specifically, Defendant Officers on the scene collectively had knowledge of specific facts which lead them to objectively

believe there was an immediate need to enter the residence and protect themselves and others including the following: (1) a dispatcher broadcast a call to Defendant Officers of a domestic disturbance at 9616 N. 110 East Avenue, Owasso, Oklahoma, where it was reported that the suspect had knocked the victim across the room and that there were many weapons in the houses; (2) As Officer Hutton approached the house, Officer Hutton could hear Mr. Huntley say, "I don't want you ever talking to them again" or words to that effect, which Officer Hutton understood to mean talking to the police. Based on this statement, Officer Hutton feared there might be a hostage situation if he let Plaintiff shut the door and retreat into the house; (3) Plaintiff was aware of the presence of the police outside his home and as the Defendant Officers approached the Huntley residence, Plaintiff began to close the door. As such, Defendant Officers believed the safety of the victim Mrs. Huntley would be in jeopardy of further harm if the suspect was allowed to separate them from the victim, and (4) the front porch of the Huntley residence was confined and there was no way for Officer Hutton, or Officer Mitchell to move to a safe position if someone from inside the house produced a firearm. This also influenced Officer Mitchell's decision to move inside and secure Plaintiff as soon as possible.

At this point, based on the information and circumstances as they appeared to them, Defendant Officers reasonably believed the victim's safety was immediately at risk, as well as their own safety. Considering all the facts and inferences combined, the Court finds the Defendant Officers had probable cause to believe a crime had been committed and exigent circumstances existed which allowed Defendant Officers to lawfully enter Plaintiff's residence.

Further, Plaintiff's seizure was objectively reasonable and Defendant Officers had probable cause to detain and arrest Plaintiff. Law enforcement personnel may arrest a person

6

without a warrant if there was probable cause to believe that a person has committed a crime. *United States v. Wright*, 932 F.2d 868, 877 (10th Cir. 1991). In order to determine if probable cause existed, "the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information [must be] sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975. Further, probable cause is evaluated "in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer." *U.S. v. McCormick*, 468 F.2d 68, 73 (10th Cir. 1972).

Based on the facts known to Defendant Officers at the time of Plaintiff's arrest, Officers reasonably believed an offense had been committed. As such, Defendant Officers properly seized and detained Plaintiff. Further, Plaintiff's detention was lawful and necessary in order to determine the veracity of the victim's claims of domestic violence. As such, the Officers committed no Fourth Amendment violation in their actions and Plaintiff's claims for unlawful entry and seizure are without merit.

Plaintiff also contends Defendant Officers used excessive force effectuating his arrest in violation of the Fourth Amendment. Whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights is analyzed under the 'objective reasonableness' standard. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005)(quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). This reasonableness inquiry turns on several factors, including the alleged crime's severity, the threat a suspect poses, and the suspect's efforts to resist or evade arrest. *Id*. In essence these factors "evaluate the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the

circumstances of the case. *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

Defendant officers argue the amount of force used in arresting Plaintiff was objectively reasonable. In the instant case, Defendant Officers were alerted when the dispatcher broadcast a call of a domestic disturbance in progress at 9616 N. 110 E. Avenue, Owasso, Oklahoma. The dispatcher reported the suspect had knocked the victim across the room and there were many weapons in the house, which Defendant Officers reasonably believed could include guns or knives.

Further, as Defendant Officers approached the front door of the residence, Plaintiff indicated he did not want the victim talking to the police. Plaintiff attempted to close the front door preventing Defendant Officers from accessing the victim. Defendant Hutton also believed that Plaintiff's admonishment to his wife for calling the police as well as his attempt to keep the police from entering, created an increasingly dangerous situation, possibly involving a hostage. Plaintiffs' unpredictable behavior increased the severity and danger of the situation, and the actions of Officer Mitchell and Officer Hutton were objectively reasonable given the totality of the circumstances.

Second, the *Graham* analysis considers whether the subject poses an immediate threat to the safety of the officer, or other officers. As previously stated, Plaintiff undoubtedly posed an immediate threat because of the Defendant Officers' knowledge that Plaintiff had used violence against his wife and there were many weapons in the house. In addition, Plaintiff's refusal to comply with the Defendant Officers' commands increased the severity of the situation but also placed Defendant Officers' safety in jeopardy. Specifically, Plaintiff was told "not to do that" repeatedly when he attempted to shut the door on Defendant Officers preventing them from

securing the situation.  Further, Plaintiff refused commands to exit the residence.

Defendant Officers were forced to make a split-second decision about the amount of force necessary to protect the victim, Mrs. Huntley, themselves, and other officers in a situation that was tense, uncertain, and rapidly evolving.  In accordance with Defendant Officers' previous CLEET and law enforcement training, they had been instructed that a suspect who poses a threat to officer safety can be secured by using reasonable force.  In this case, Officer Mitchell and Officer Hutton's options were limited due to the proximity to the Plaintiff in the home and the rapidly evolving nature of the event.  Officer Mitchell and Officer Hutton responded with minimal force in restraining a resistant individual.  It was necessary for Officer Mitchell and Officer Hutton to implement the use of force for their own safety as well as the safety of the other officers and the victim, Mrs. Huntley.  As such, Defendants use of force was objectively reasonable based on the totality of the circumstances.

Finally, the *Graham* analysis requires the Court to determine whether the subject was resisting arrest.  In the instant case, despite repeated command by Officer Mitchell and Officer Hutton that Mr. Huntley come outside,  Mr. Huntley refused to comply. Considering the "totality of the circumstances," Officer Mitchell and Officer Hutton exercised reasonable and justifiable force to prevent Plaintiff from resisting arrest. Therefore, Defendants are entitled to qualified immunity. [1]

---

[1] Summary Judgment is appropriate for the Defendant City because the Court finds no constitutional violation occurred by the Defendant Officers.  Plaintiff has produced no evidence to support his claim for municipal liability, or his claim that Defendant City had a policy or custom resulting in a failure to train or supervise.  Likewise, Plaintiff has failed to establish Defendant City's liability under the Governmental Tort Claims Act because there was no injury proximately caused by the Defendant Officers.  *See Nicholson v. Tacker*, 512 P.2d 156 (Okla. 1973);

### III. Conclusion

For the reasons set forth above, Defendants' Motions for Summary Judgment [Dkt.#s 37 and 38] are granted.

**IT IS SO ORDERED** this 27th day of September, 2011.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma